## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **TERRY TERESITA HERNANDEZ** | **CASE NO.** |
| Plaintiff, | |
| | **CLASS ACTION** |
| v. | |
| | **JURY TRIAL DEMAND** |
| **MONROE UNIVERSITY, LTD.,** | |
| Defendant. | |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Terry Teresita Hernandez, individually and on behalf of all others similarly situated, brings this action against Monroe University, Ltd., ("Monroe" or "Defendant"). The following allegations are based on Plaintiff's knowledge, investigations of counsel, facts of public record, and information and belief.

## NATURE OF THE ACTION

1.    This class action arises out of the recent data security incident and data breach that was perpetrated against Defendant Monroe (the "Data Breach"), which held in its possession certain personally identifiable information ("PII") and protected health information ("PHI") (collectively, the "Private Information") of Plaintiff and other current and former students and applicants of Defendant, the putative class members ("Class"). This Data Breach occurred between December 9 and December 23, 2024

2.    The data that Defendant caused to be exfiltrated by cybercriminals for the purpose of engaging identity theft to the detriment and injury to Plaintiff and Class Members

1

is by its nature highly sensitive. Upon information and belief, the exfiltrated data included PII and PHI like individuals' names, physical addresses, phone numbers, dates of birth, health insurance account information, Social Security numbers, provider taxpayer identification numbers, and clinical information (*e.g.*, medical history, diagnoses, treatment, dates of service, and provider names) (hereinafter "Private Information").

3.      Upon information and belief, prior to and through the date of the Data Breach, Defendant obtained Plaintiff and Class Members' Private Information and then maintained that sensitive data in a negligent and/or reckless manner. As evidenced by the Data Breach, Defendant inadequately maintained their network, platform, software, and technology partners—making these easily accessible by cybercriminals.

4.      The Private Information was accessed and/or acquired by cybercriminals who perpetrated the attack and remains in the hands of those cybercriminals. According to Defendant's report to the Office of the Attorney General of Maine, 320,973 or more individuals' Private Information was compromised

5.      Upon information and belief, the risk of the Data Breach was known to Defendant. Thus, Defendant was on notice that their inadequate data security created a heightened risk of exfiltration, compromise, and theft.

6.      Then, after the Data Breach, Defendant failed to provide timely notice to the affected Plaintiff and Class Members—thereby exacerbating their injuries. Ultimately, Defendant deprived Plaintiff and Class Members of the chance to take speedy measures to protect themselves and mitigate harm. Simply put, Defendant impermissibly left Plaintiff and Class Members in the dark—thereby causing their injuries to fester and the damage to spread.

7.     Even when Defendant finally notified Plaintiff and Class Members of their PII and PHI's exfiltration, Defendant failed to adequately describe the Data Breach and its effects.

8.     Today, the identities of Plaintiff and Class Members have been compromised— all because of Defendant's negligence. Plaintiff and Class Members now suffer from a present and continuing risk of harm, including fraud and identity theft, and must now constantly monitor their financial accounts.

9.     Armed with the PII and PHI stolen in the Data Breach, criminals can commit a litany of crimes. Specifically, criminals can now open new financial accounts in Class Members' names, take out loans using Class Members' identities, use Class Members' names to obtain medical services, use Class Members' health information to craft phishing and other hacking attacks based on Class Members' individual health needs, use Class Members' identities to obtain government benefits, file fraudulent tax returns using Class Members' information, obtain driver's licenses in Class Members' names (but with another person's photograph), and give false information to police during an arrest.

10.     Plaintiff and Class Members have suffered and will suffer additional financial costs for purchasing necessary credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft.

11.     Plaintiff and Class Members have suffered—and will continue to suffer—from the loss of the benefit of their bargain, unexpected out-of-pocket expenses, lost or diminished value of their PII and PHI, emotional distress, and the value of their time reasonably incurred to mitigate the fallout of the Data Breach.

12.     Through this action, Plaintiff seeks to remedy these injuries on behalf of herself and all similarly situated individuals whose PII and PHI were exfiltrated and compromised in the Data Breach.

13.     Plaintiff seeks remedies including, but not limited to, compensatory damages, treble damages, punitive damages, reimbursement of out-of-pocket costs, and injunctive relief—including improvements to Defendant's data security systems, future annual audits, and adequate credit monitoring services funded by Defendant.

## PARTIES

14.     Plaintiff Teresita Hernandez is a natural person and resident and citizen of the State of New York.

15.     Defendant Monroe University is a New York-based entity incorporated in New York that provides higher education for residents of many states. Defendant's principal place of business is 2501 Jerome Ave., Bronx, New York 10468.

## JURISDICTION AND VENUE

16.     This Court has original jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because this is a class action involving more than 100 putative class members and the amount in controversy exceeds $5,000,000, exclusive of interest and costs. And minimal diversity is established because many members of the class are citizens of states different than that of Defendant.

17.     This Court has general personal jurisdiction over Defendant because Defendant's principal place of business and headquarters is in this District. Defendant also regularly conduct substantial business in this District.

18.     Venue is proper in this District under 28 U.S.C. §§ 1391(a)(2), 1391(b)(2), and 1391(c)(2) because substantial part of the events giving rise to the claims emanated from activities within this District, and Defendant conducts substantial business in this District.

## **FACTUAL ALLEGATIONS**

19.     Defendant Monroe University is a private, for-profit institution of higher education headquartered in New York, with campuses in the Bronx, New Rochelle, and Saint Lucia, and additional degree programs offered online. Founded in 1933, Monroe University offers a wide range of undergraduate, graduate, and continuing education programs across disciplines such as business, allied health, hospitality, education, and nursing, and emphasizes career-oriented curricula designed to prepare students for professional growth and employment

20.     As part of its recruitment, admissions, enrollment, financial aid administration, student health services, and educational operations, Monroe collects and maintains vast quantities of highly sensitive personally identifiable information ("PII") and protected health information ("PHI"), including full names, home addresses, dates of birth, Social Security numbers, student identification numbers, driver's license numbers, financial account information, financial aid records, and health insurance policy numbers.

21.     Defendant owed Plaintiff and Class Members—students, prospective students, employees, and other individuals whose information it collected—a duty to safeguard this sensitive information and to implement and maintain reasonable, industry-standard data security measures to protect against unauthorized access, theft, and disclosure.

22.     In the ordinary course of business with Defendant, each student and applicant must provide (and Plaintiff and Class Members did provide) Defendant with sensitive, personal, and private information, such as their:

- Name;
- Social Security Number;

5

- Driver's license number;
- State identification number;
- Financial account information;
- Date of birth;
- Home address;
- Home phone number
- Email ; and
- Financial Aid Information

23.    All of Defendant's employees, staff, entities, sites, and locations may share student and applicant information with each other for various purposes, as should be disclosed in a HIPAA compliant privacy notice ("Privacy Policy") that Defendant is required to maintain.

24.    Upon information and belief, Defendant's HIPAA Privacy Policy is provided to every student and applicant.

25.    Defendant agreed to and undertook legal duties to maintain the protected health and personal information entrusted to it by Plaintiff and Class Members safely, confidentially, and in compliance with all applicable laws, including the Health Insurance Portability and Accountability Act ("HIPAA").

26.    The student and applicant information held by Defendant in its computer system and network included the Private Information of Plaintiff and Class Members.

**THE DATA BREACH**

27.    A Data Breach occurs when cyber criminals intend to access and steal Private Information that has not been adequately secured by a business entity like Defendant.

28.    According to Defendant's public Notice of Data Security Incident:

We are posting this notice to inform our community of a data security incident. We have learned that an unauthorized party gained access to certain Monroe University computer systems between December 9, 2024 and December 23, 2024 and acquired copies of some files on our network during that time. We reviewed these files and, on September 30, 2025, determined that they contained some personal information for certain individuals. The type of information involved varied by person but may have included one or more of the following: name, date of birth, Social Security number, driver's license number, passport number, government identification number, medical information, health insurance

6

information, electronic account or email username and password, financial account information, and/or student data.

29.    The HHS requires "[i]f a breach of unsecured protected health information affects 500 or more individuals, a covered entity must notify the Secretary of the breach without unreasonable delay and in no case later than 60 calendar days from the discovery of the breach."[6]

30.    Further, if "the number of individuals affected by a breach is uncertain at the time of submission, the covered entity should provide an estimate," and later provide an addendum or correction to HSS.

31.    Defendant cannot claim they were unaware of the HHS notification requirements as they complied (at least in part) with those requirements.

32.    Defendant's notice letter to its victims was dated January 2, 2026—over three months after the incident was discovered.

33.    Defendant had obligations created by HIPAA, contract, industry standards, common law, and representations made to Class Members, to keep Class Members' Private Information confidential and to protect it from unauthorized access and disclosure.

34.    Plaintiff and Class Members provided their Private Information to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with their obligations to keep such information confidential and secure from unauthorized access.

35.    Defendant's data security obligations were particularly important given the substantial increase in Data Breaches to businesses preceding the date of the breach.

36.    As reported by the Identity Theft Resource Center, in 2023 a record 3,205 data breaches occurred, resulting in around 353,027,892 individuals' information being compromised, a 78% increase from 2022.[8] Of the 2023 recorded data breaches, 173 of them, or over 5%, were in the education industry.[9] The 173 breaches reported in 2023 exposed nearly 4 million sensitive

records. This is up from 2022 in which there were a reported 99 breaches that exposed approximately 2 million sensitive records.

37.     Data breaches such as the one experienced by Defendant have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service have issued a warning to potential targets, so they are aware of, and prepared for, a potential attack.

*38.*     Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including Defendant.

### DEFENDANT FAILS TO COMPLY WITH FTC GUIDELINES

39.     The Federal Trade Commission ("FTC") has promulgated many guides for businesses which show how important it is to implement reasonable data security practices. According to the FTC, the need for data security should shape all business decision-making.

40.     In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity suggesting someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

41.     The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security

8

measures.

42.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect patient data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions also clarify the measures businesses must take to meet their data security obligations.

43.    These FTC enforcement actions include actions against businesses like Defendant. See, e.g., In the Matter of LabMD, Inc., A Corp, 2016-2 Trade Cas. (CCH) ¶ 79708, 2016 WL 4128215, at *32 (MSNET July 28, 2016) ("[T]he Commission concludes that LabMD's data security practices were unreasonable and constitute an unfair act or practice in violation of Section 5 of the FTC Act.").

44.    Defendant failed to properly implement basic data security practices.

45.    Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to students and applicants' PII and PHI constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

46.    Defendant was always fully aware of its obligation to protect the PII and PHI of its students and applicants. Defendant was also aware of the significant repercussions that would result from its failure to do so.

*DEFENDANT FAILS TO COMPLY WITH INDUSTRY STANDARDS*

47.    As shown above, experts studying cyber security routinely identify educational institutions as being particularly vulnerable to cyberattacks because of the value of the PII and PHI which they collect and maintain.

48.    Several best practices have been identified that a minimum should be implemented by educational institutions like Defendant, including, but not limited to, educating all employees; using strong passwords; creating multi-layer security, including firewalls, antivirus, and anti-malware software; encryption, making data unreadable without a key; using multi-factor authentication; protecting backup data; and limiting which employees can access sensitive data.

49.    Other best cybersecurity practices that are standard for educational institutions include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points.

50.    Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

51.    These foregoing frameworks are existing and applicable industry standards and Defendant failed to comply with these accepted standards, thereby opening the door to and causing the Data Breach.

***DEFENDANT'S CONDUCT VIOLATES HIPAA AND REVEALS ITS INSUFFICIENT DATA SECURITY***

52.    HIPAA requires covered entities such as Defendant to protect against reasonably anticipated threats to the security of sensitive student and applicant health information.

53.    Covered entities must implement safeguards to ensure the confidentiality, integrity, and availability of PHI. Safeguards must include physical, technical, and administrative components.

54.    Title II of HIPAA contains what are known as the Administrative Simplification provisions. 42 U.S.C. §§ 1301, et seq. These provisions require, among other things, that the Department of Health and Human Services ("HHS") create rules to streamline the standards for handling PII like the data Defendant left unguarded. The HHS subsequently promulgated multiple regulations under authority of the Administrative Simplification provisions of HIPAA. These rules include 45 C.F.R. § 164.306(a) (1-4); 45 C.F.R. § 164.312(a)(1); 45 C.F.R. § 164.308(a)(1)(i); 45 C.F.R. § 164.308(a)(1)(ii)(D), and 45 C.F.R. § 164.530(b).

55.    A Data Breach such as the one Defendant experienced, is considered a breach under the HIPAA Rules because there is an access of PHI not permitted under the HIPAA Privacy Rule:

> A breach under the HIPAA Rules is defined as, "...the acquisition, access, use, or disclosure of PHI in a manner not permitted under the [HIPAA Privacy Rule] which compromises the security or privacy of the PHI." See 45 C.F.R. 164.40.

56.    Defendant's Data Breach resulted from a combination of insufficiencies that demonstrate they failed to meet mandated by HIPAA regulations.

**DEFENDANT'S BREACH**

57.    Defendant breached its obligations to Plaintiff and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard its computer

systems and its data. Defendant's unlawful conduct includes, but is not limited to, the following

acts and/or omissions:

    a.   Failing to maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks;

    b.   Failing to adequately protect students and applicants' Private Information;

    c.   Failing to properly monitor its own data security systems for existing intrusions;

    d.   Failing to ensure that vendors with access to Defendant's protected health data employed reasonable security procedures;

    e.   Failing to ensure the confidentiality and integrity of electronic PHI they created, received, maintained, and/or transmitted, in violation of 45 C.F.R. § 164.306(a)(1);

    f.   Failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

    g.   Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 C.F.R. § 164.308(a)(1)(i);

    h.   Failing to implement procedures to review records of information system activity regularly, such as audit logs, access reports, and security incident tracking reports in violation of 45 C.F.R. § 164.308(a)(1)(ii)(D);

    i.   Failing to protect against reasonably anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

    j.   Failing to protect against reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules related to individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

    k.   Failing to ensure compliance with HIPAA security standard rules by Defendant's workforce in violation of 45 C.F.R. § 164.306(a)(4);

    l.   Failing to train all members of Defendant's workforce effectively on the policies and procedures about PHI as necessary and appropriate for the members of its workforces to carry out their functions and to maintain security of PHI, in violation of 45 C.F.R. § 164.530(b); and/or

    m.  Failing to render the electronic PHI they maintained unusable, unreadable, or indecipherable to unauthorized individuals, as they had not encrypted the

electronic PHI as specified in the HIPAA Security Rule by "the use of an algorithmic process to transform data into a form in which there is a low probability of assigning meaning without use of a confidential process or key" (45 C.F.R. § 164.304, definition of "encryption").

58.     As the result of computer systems needing security upgrading, inadequate procedures for handling emails containing ransomware or other malignant computer code, and inadequately trained employees who opened files containing the ransomware virus, Defendant negligently and unlawfully failed to safeguard Plaintiff's and Class Members' Private Information.

59.     Plaintiff and Class Members now face an increased risk of fraud and identity theft.

## DATA BREACHES PUT CONSUMERS AT AN INCREASED RISK OF FRAUD AND IDENTIFY THEFT

60.     Data Breaches such as the one experienced by Defendant's students and applicants are especially problematic because of the disruption they cause to the overall daily lives of victims affected by the attack.

61.     The United States Government Accountability Office released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."

62.     The FTC recommends that identity theft victims take several steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert (or an extended fraud alert that lasts for 7 years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit

reports.

63.    Identity thieves use stolen personal information such as Social Security numbers for various crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.

64.    Identity thieves can also use Social Security numbers to obtain a driver's license or official identification card in the victim's name but with the thief's picture; use the victim's name and Social Security number to obtain government benefits; or file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's Social Security number, rent a house or receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest resulting in an arrest warrant being issued in the victim's name.

65.    Theft of Private Information is gravely serious. PII/PHI is a valuable property right.15 Its value is axiomatic, considering the value of Big Data in corporate America and the consequences of cyber thefts include heavy prison sentences. Even this obvious risk to reward analysis illustrates beyond doubt that Private Information has considerable market value.

66.    Theft of PHI is also gravely serious: "A thief may use your name or health insurance numbers to see a doctor, get prescription drugs, file claims with your insurance provider, or get other care. If the thief's health information is mixed with yours, your treatment, insurance and payment records, and credit report may be affected."16 Drug manufacturers, medical device manufacturers, pharmacies, hospitals and other healthcare service providers often purchase PII/PHI on the black market for the purpose of target marketing their products and services to the physical maladies of the data breach victims themselves. Insurance companies purchase and use wrongfully disclosed PHI to adjust their insureds' medical

insurance premiums.

67.    It must also be noted there may be a substantial time lag—measured in years—between when harm occurs versus when it is discovered, and between when Private Information and/or financial information is stolen and when it is used. According to the U.S. Government Accountability Office, which studied data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

> *See* GAO Report, at p. 29.

68.    Private Information and financial information are such valuable commodities to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black-market" for years.

69.    There is a strong probability that all the stolen information has been dumped on the black market or will be dumped on the black market, meaning Plaintiff and Class Members are at an increased risk of fraud and identity theft for many years into the future. Thus, Plaintiff and Class Members must vigilantly monitor their financial and medical accounts for many years to come.

70.    Sensitive Private Information can sell for as much as $363 per record according to the Infosec Institute. PII is particularly valuable because criminals can use it to target victims with frauds and scams. Once PII is stolen, fraudulent use of that information and damage to victims may continue for years.

71.    For example, the Social Security Administration has warned that identity

thieves can use an individual's Social Security number to apply for more credit lines.18 Such fraud may go undetected until debt collection calls commence months, or even years, later. Stolen Social Security Numbers also make it possible for thieves to file fraudulent tax returns, file for unemployment benefits, or apply for a job using a false identity. Each of these fraudulent activities is difficult to detect. An individual may not know that his or her Social Security Number was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

72.    It is also hard to change or cancel a stolen Social Security number.

73.    An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. Even then, a new Social Security number may not be effective, as "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."

74.    This data, as one would expect, demands a much higher price on the black market.

75.    The National Association of Healthcare Access Management reports, "[p]ersonal medical data is said to be more than ten times as valuable as credit card information."

76.    Medical information is especially valuable to identity thieves. According to account monitoring company LogDog, coveted Social Security numbers were selling on the dark web for just $1 in 2016—the same as a Facebook account. That pales in comparison with the asking price for medical data, which was selling for $300 and up.22

77.     In recent years, businesses have experienced disproportionally higher numbers of data theft events than other industries. Defendant therefore knew or should have known this and strengthened their data systems accordingly. Defendant was put on notice of the substantial and foreseeable risk of harm from a data breach, yet they failed to properly prepare for that risk.

## PLAINTIFF'S EXPERIENCE

78.     Plaintiff Terry Teresita Hernandez is and at all times mentioned herein was an individual citizen residing in the Bronx, New York.

79.     Plaintiff provided Defendant with her sensitive PII and PHI as a condition of her enrollment at Defendant's university.

80.     After Plaintiff left Defendant's university, Defendant suffered a Data Breach.

81.     Plaintiff received notice of the Data Breach in January 2026, informing her that her PII and PHI may have been either accessed and/or acquired by an unauthorized individual including Plaintiff's Social Security number, date of birth, driver's license number, passport number, medical/health insurance information, and financial account details.

82.     Plaintiff reasonably expected and understood that Defendant would take, at a minimum, industry standard precautions to protect, maintain, and safeguard her Private Information from unauthorized users or disclosure, and would timely notify her of any data security incidents related to the same.

83.     Plaintiff is very careful about sharing her sensitive Private Information. She has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source. Plaintiff also stores any documents containing her sensitive Private Information in a safe and secure location or destroys the documents.

84.    Because of the Data Breach and at the recommendation of Defendant and its Notice, Plaintiff made reasonable efforts to mitigate the effect of the Data Breach, including, but not limited to, changing passwords, researching the Data Breach, reviewing financial statements, monitoring her credit information, and seeking further advice of counsel.

85.    Plaintiff has spent much time responding to the dangers from the Data Breach and will continue to spend valuable time she otherwise would have spent on other activities, including, but not limited to work and recreation.

86.    Because of the Data Breach, Plaintiff anticipates being required to spend considerably more time and money to try and mitigate her injuries.

87.    Plaintiff is especially alarmed by the type of stolen or accessed Private Information listed in Defendant's notice letter. Despite Defendant providing that list, Plaintiff cannot be sure whether more of her Private Information was exfiltrated.

88.    Plaintiff knows that cybercriminals often sell Private Information, and that her Private Information could be abused months or even years after a data breach.

89.    Plaintiff fears for her personal financial security and worries about what information was exposed in the Data Breach.

90.    Had Plaintiff been aware that Defendant's computer systems were not secure, she would not have entrusted Defendant with her personal data.

91.    Plaintiff suffered actual injury from the exposure and theft of her Private Information—which violates her rights to privacy.

92.    Plaintiff suffered actual injury in the form of damages to and diminution in the value of her Private Information. After all, Private Information is a form of intangible

property—property that Defendant was required to adequately protect.

93.     Plaintiff suffered imminent and impending injury arising from the substantially increased risk of fraud, misuse, and identity theft—all because Defendant's Data Breach placed Plaintiff's Private Information right in the hands of criminals.

94.     Today, Plaintiff has a continuing interest in ensuring that her Private Information—which, upon information and belief, remains backed up in Defendant's possession—is protected and safeguarded from additional breaches.

## **PLAINTIFF'S AND CLASS MEMBERS' DAMAGES**

95.     To date, Defendant has done little to provide Plaintiff and Class Members with relief for the damages they have suffered because of the Data Breach, including, but not limited to, the costs and loss of time they incurred because of the Data Breach.

96.     Plaintiff and Class Members have been damaged by the compromise and exfiltration of their Private Information in the Data Breach, and by the severe disruption to their lives as a direct and foreseeable consequence of this Data Breach.

97.     Plaintiff's Private Information was compromised and exfiltrated by cybercriminals as a direct and proximate result of the Data Breach.

98.     Plaintiff was damaged in that her Private Information is in the hands of cybercriminals.

99.     As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have been placed at an actual, present, immediate, and continuing increased risk of harm from fraud and identity theft.

100.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have been forced to expend time dealing with the effects of the Data Breach.

101.    Plaintiff and Class Members face substantial risk of out-of-pocket fraud losses such as loans opened in their names, medical services billed in their names, tax return fraud, utility bills opened in their names, credit card fraud, and similar identity theft.

102.    Plaintiff and Class Members face substantial risk of being targeted for future phishing, data intrusion, and other illegal schemes based on their Private Information as potential fraudsters could use that information to more effectively target such schemes to Plaintiff and Class Members.

103.    Plaintiff and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

104.    Plaintiff and Class Members also suffered a loss of value of their Private Information when it was acquired by cybercriminals in the Data Breach. Many courts have recognized the propriety of loss of value damages in related cases.

105.    Plaintiff and Class Members have spent and will continue to spend significant amounts of time to monitor their financial accounts and records for misuse.

106.    Plaintiff and Class Members have suffered or will suffer actual injury as a direct result of the Data Breach. Many victims suffered ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach relating to:

    a.    Finding fraudulent charges;

    b.    Canceling and reissuing credit and debit cards;

    c.    Purchasing credit monitoring and identity theft prevention;

    d.    Addressing their inability to withdraw funds linked to compromised accounts;

e.  Taking trips to banks and waiting in line to obtain funds held in limited accounts;

f.  Placing "freezes" and "alerts" with credit reporting agencies;

g.  Spending time on the phone with or at a financial institution to dispute fraudulent charges;

h.  Contacting financial institutions and closing or modifying financial accounts;

i.  Resetting automatic billing and payment instructions from compromised credit and debit cards to new ones;

j.  Paying late fees and declined payment fees imposed because of failed automatic payments that were tied to compromised cards that had to be cancelled; and

k.  Closely reviewing and monitoring bank accounts and credit reports for unauthorized activity for years to come.

107.  Moreover, Plaintiff and Class Members have an interest in ensuring that their Private Information, which is believed to remain in the possession of Defendant, is protected from further breaches by implementing security measures and safeguards, including, but not limited to, making sure that the storage of data or documents containing personal and financial information is inaccessible online and that access to such data is password-protected.

108.  Further, because of Defendant's conduct, Plaintiff and Class Members are forced to live with the anxiety that their Private Information—which contains the most intimate details about a person's life—may be disclosed to the entire world, thereby subjecting them to embarrassment and depriving them of any right to privacy whatsoever.

109.  As a direct and proximate result of Defendant's actions and inactions, Plaintiff and Class Members have suffered anxiety, emotional distress, and loss of privacy, and are at an increased risk of future harm.

## CLASS ACTION ALLEGATIONS

21

110.    Plaintiff brings this action on behalf of herself and on behalf of all other persons similarly situated ("the Class") under Fed. R. Civ. P. 23(b)(2), 23(b)(3), and 23(c)(4).

111.    Plaintiff proposes the following Class definition, subject to amendment as appropriate:

**All persons whose Private Information was compromised because of the December 2024 Data Breach (the "Class").**

112.    The Class defined above is readily ascertainable from information in Defendant's possession. Thus, such identification of Class Members will be reliable and administratively feasible.

113.    Excluded from the Class are: (1) any judge or magistrate presiding over this action and members of their families; (2) Defendant and their subsidiaries, parents, successors, predecessors, affiliated entities, and any entity in which their parents have a controlling interest, and their current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; (6) members of the jury; and (7) the legal representatives, successors, and assigns of any such excluded persons.

114.    Plaintiff reserves the right to amend or modify the Class definition—including potential Subclasses—as this case progresses.

115.    Plaintiff and Class Members satisfy the numerosity, commonality, typicality, and adequacy requirements under Fed. R. Civ. P. 23.

116. **Numerosity**. The Class Members are numerous such that joinder is impracticable. While the exact number of Class Members is unknown to Plaintiff at this time, based on information and belief, the Class consists of the approximately 320,000 individuals whose PII and PHI were compromised by Defendant's Data Breach.

117. **Commonality**. There are many questions of law and fact common to the Class. And these common questions predominate over any individualized questions of individual Class Members. These common questions of law and fact include, without limitation:

    a.    If Defendant unlawfully used, maintained, lost, or disclosed Plaintiff's and Class Members' PII and PHI;

    b.    If Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

    c.    If Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations including, *e.g.*, HIPAA;

    d.    If Defendant's data security systems prior to and during the Data Breach were consistent with industry standards;

    e.    If Defendant owed a duty to Class Members to safeguard their PII and PHI;

    f.    If Defendant breached its duty to Class Members to safeguard their PII and PHI;

g.    If Defendant knew or should have known that its data security systems and monitoring processes were deficient;

h.    If Defendant should have discovered the Data Breach earlier;

i.    If Defendant took reasonable measures to determine the extent of the Data Breach after it was discovered;

j.    If Defendant's delay in informing Plaintiff and Class Members of the Data Breach was unreasonable;

k.    If Defendant's method of informing Plaintiff and Class Members of the Data Breach was unreasonable;

l.    If Defendant's conduct was negligent;

m.    If Plaintiff and Class Members were injured as a proximate cause or result of the Data Breach;

n.    If Plaintiff and Class Members suffered legally cognizable damages as a result of Defendant's misconduct;

o.    If Defendant breached implied contracts with Plaintiff and Class Members;

p.    If Defendant was unjustly enriched by unlawfully retaining a benefit conferred upon them by Plaintiff and Class Members;

q.    If Defendant failed to provide notice of the Data Breach in a timely manner; and

r.    If Plaintiff and Class Members are entitled to damages, civil penalties, punitive damages, treble damages, and/or injunctive relief.

118. **Typicality**. Plaintiff's claims are typical of those of other Class Members because Plaintiff's Private Information, like that of every other Class Member, was compromised in the Data Breach. Moreover, Plaintiff and Class Members were subjected to Defendant's uniformly illegal and impermissible conduct.

119. **Adequacy of Representation**. Plaintiff will fairly and adequately represent and protect the interests of the Members of the Class. Plaintiff's Counsel are competent and experienced in litigating complex class actions. Plaintiff has no interests that conflict with, or are antagonistic to, those of the Class.

120. **Predominance**. Defendant has engaged in a common course of conduct toward Plaintiff and Class Members, in that Plaintiff and Class Members' data was stored on the same network system and unlawfully and inadequately protected in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

121. **Superiority**. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as

a Class action presents far fewer management difficulties, conserves judicial resources, the parties' resources, and protects the rights of each Class Member.

122.    The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

123.    Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

124.    Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include those set forth above.

125.    Defendant has acted on grounds that apply generally to the Class as a whole, so that Class certification, injunctive relief, and corresponding declaratory relief are appropriate on a Class-wide basis.

### FIRST CAUSE OF ACTION
**Negligence**
**(On Behalf of Plaintiff and the Class)**

126.    Plaintiff re-alleges and incorporate by reference paragraphs 1 through 125 of the Complaint as if fully set forth herein.

127.    Defendant required its customers to submit Plaintiff's and Class Members' non-public PII and PHI to receive Defendant's services.

128.    By collecting and storing this data in their computer system and network, and sharing it and using it for commercial gain, Defendant owed a duty of care to use reasonable means to secure and safeguard their computer system—and Plaintiff's and Class Members' PII and PHI held within it—to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duty included a responsibility to implement processes so they could detect a breach of its security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a data breach.

129.    The risk that unauthorized persons would attempt to gain access to the PII and PHI and misuse it was foreseeable. Given that Defendant holds vast amounts of PII and PHI, it was inevitable that unauthorized individuals would at some point try to access Defendant's databases of PII and PHI.

130.    After all, PII and PHI is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII and PHI of Plaintiff and Class Members. Thus, Defendant knew, or should have known, the importance of exercising reasonable care in handling the PII and PHI entrusted to them.

131.    Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that their systems and networks, and the personnel responsible for them, adequately protected the PII and PHI.

132.    Defendant's duty of care to use reasonable security measures arose because of the special relationship that existed between Defendant and members, which is recognized by laws and regulations including but not limited to HIPAA, as well as common

law. Defendant were in a superior position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Class Members from a data breach.

133.    Defendant failed to take appropriate measures to protect the PII and PHI of Plaintiff and the Class. Defendant are morally culpable, given the prominence of security breaches in the healthcare industry. Any purported safeguards that Defendant had in place were wholly inadequate.

134.    Defendant breached its duty to exercise reasonable care in safeguarding and protecting Plaintiff's and the Class members' PII and PHI by failing to adopt, implement, and maintain adequate security measures to safeguard that information, despite known data breaches in the healthcare industry, and allowing unauthorized access to Plaintiff's and the other Class Members' PII and PHI.

135.    The failure of Defendant to comply with industry and federal regulations evinces Defendant's negligence in failing to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' PII and PHI.

136.    But for Defendant's wrongful and negligent breach of their duties to Plaintiff and the Class members' PII and PHI would not have been compromised, stolen, and viewed by unauthorized persons. Defendant's negligence was a direct and legal cause of the theft of the PII and PHI of Plaintiff and the Class and all resulting damages.

137.    The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendant's failure to exercise reasonable care in safeguarding and protecting Plaintiff's and the other Class members' PII and PHI.

Defendant knew or should have known that their systems and technologies for processing and securing the PII and PHI of Plaintiff and the Class had security vulnerabilities.

138.    As a result of this misconduct by Defendant, the PII, PHI, and other sensitive information of Plaintiff and the Class was compromised, placing them at a greater risk of identity theft and their PII and PHI being disclosed to third parties without the consent of Plaintiff and the Class.

**SECOND CAUSE OF ACTION**
**Negligence *Per Se***
**(On Behalf of Plaintiff and the Class)**

139.    Plaintiff re-alleges and incorporate by reference paragraphs 1 through 125 of the Complaint as if fully set forth herein.

140.    Under HIPAA, Defendant had a duty to use reasonable security measures to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information."[1] Some or all of the medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.[2]

141.    Moreover, under HIPAA, Defendant had a duty to render the electronic PII and PHI that it maintained as unusable, unreadable, or indecipherable to unauthorized individuals. Specifically, the HIPAA Security Rule requires "the use of an algorithmic

---

[1] 45 C.F.R. § 164.530(c)(1).
[2] *Id.*

process to transform data into a form in which there is a low probability of assigning meaning without use of a confidential process or key."[3]

142.    Plaintiff and Class Members are within the class of persons that the HIPAA was intended to protect. And the injuries that Defendant inflicted on Plaintiff and Class Members are precisely the harms that HIPAA guards against. After all, the Federal Health and Human Services' Office for Civil Rights ("OCR") has pursued enforcement actions against businesses which—because of their failure to employ reasonable data security measures for PHI—caused the very same injuries that Defendant inflicted upon Plaintiff and Class Members.

143.    Under § 17932 of the Health Information Technology for Economic and Clinical Health Act ("HITECH"), Defendant have duty to promptly notify "without unreasonable delay and in no case later than 60 calendar days after the discovery of a breach" the respective covered entities and affected persons so that the entities and persons can take action to protect themselves.[4]

144.    Moreover, § 17932(a) of HITECH states that, "[a] covered entity that accesses, maintains, retains, modifies, records, stores, destroys, or otherwise holds, uses, or discloses unsecured protected health information (as defined in subsection (h)(1)) shall, in the case of a breach of such information that is discovered by the covered entity, notify each individual whose unsecured protected health information has been, or is reasonably

---

[3] 45 C.F.R. § 164.304 (defining encryption).
[4] 42 U.S.C.A. § 17932(d)(1).

believed by the covered entity to have been, accessed, acquired, or disclosed as a result of such breach."

145.    And § 17932(b) of HITECH states that, "[a] business associate of a covered entity that accesses, maintains, retains, modifies, records, stores, destroys, or otherwise holds, uses, or discloses unsecured protected health information shall, following the discovery of a breach of such information, notify the covered entity of such breach. Such notice shall include the identification of each individual whose unsecured protected health information has been or is reasonably believed by the business associate to have been, accessed, acquired, or disclosed during such breach."

146.    Under the Federal Trade Commission Act, Defendant had a duty to employ reasonable security measures. Specifically, this statute prohibits "unfair . . . practices in or affecting commerce," including (as interpreted and enforced by the FTC) the unfair practice of failing to use reasonable measures to protect confidential data.[5]

147.    Moreover, Plaintiff's and Class Members' injuries are precisely the type of injuries that the FTCA guards against. After all, the FTC has pursued numerous enforcement actions against businesses that—because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices—caused the very same injuries that Defendant inflicted upon Plaintiff and Class Members.

---

[5] 15 U.S.C. § 45.

148.    Defendant's duty to use reasonable care in protecting confidential data arose not only because of the statutes and regulations described above, but also because Defendant are bound by industry standards to protect confidential PII and PHI.

149.    Defendant owed Plaintiff and Class Members a duty to notify them within a reasonable time frame of any breach to their PII and PHI. Defendant also owed a duty to timely and accurately disclose to Plaintiff and Class Members the scope, nature, and occurrence of the Data Breach. This duty is necessary for Plaintiff and Class Members to take appropriate measures to protect their PII and PHI, to be vigilant in the face of an increased risk of harm, and to take other necessary steps in an effort to mitigate the fallout of Defendant's Data Breach.

150.    Defendant owed these duties to Plaintiff and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from its inadequate security protocols. After all, Defendant actively sought and obtained the PII and PHI of Plaintiff and Class Members.

151.    Defendant breached their duties, and thus were negligent, by failing to use reasonable measures to protect Plaintiff's and Class Members' PII and PHI. And but for Defendant's negligence, Plaintiff and Class Members would not have been injured. The specific negligent acts and omissions committed by Defendant include, but are not limited to:

        a.    Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' PII and PHI;

32

b.     Failing to comply with—and thus violating—HIPAA and its regulations;

c.     Failing to comply with—and thus violating—HITECH and its regulations;

d.     Failing to comply with—and thus violating—FTCA and its regulations;

e.     Failing to adequately monitor the security of its networks and systems;

f.     Failing to have in place mitigation policies and procedures;

g.     Allowing unauthorized access to Class Members' PII and PHI;

h.     Failing to detect in a timely manner that Class Members' PII and PHI had been compromised; and

i.     Failing to timely notify Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

152.   It was foreseeable that Defendant's failure to use reasonable measures to protect Class Members' PII and PHI would result in injury to Class Members. Furthermore, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches in the healthcare industry. It was therefore foreseeable that the failure to adequately safeguard Class Members' PII and PHI would result in one or more types of injuries to Class Members.

153.    Simply put, Defendant's negligence actually and proximately caused Plaintiff and Class Members actual, tangible, injuries-in-fact and damages. These injuries include, but are not limited to, the theft of their PII and PHI by criminals, improper disclosure of their PII and PHI, lost benefit of their bargain, lost value of their PII and PHI, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence. Moreover, injuries-in-fact and damages are ongoing, imminent, and immediate.

154.    Plaintiff and Class Members are entitled to compensatory and consequential damages suffered because of the Data Breach.

155.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, *e.g.,* (1) strengthen their data security systems and monitoring procedures; (2) submit to future annual audits of those systems and monitoring procedures; and (3) continue to provide adequate credit monitoring to all Class Members for the remainders of their lives.

## THIRD CAUSE OF ACTION
### Unjust Enrichment
### (On Behalf of Plaintiff and the Class)

156.    Plaintiff re-alleges and incorporate by reference paragraphs 1 through 125 of the Complaint as if fully set forth herein.

157.    This cause of action is plead in the alternative to the breach of implied contract theory.

158.    Plaintiff and Class Members conferred a monetary benefit on Defendant, by paying money for healthcare services that relied on Defendant to render certain services, a

portion of which was intended to have been used by Defendant for data security measures to secure Plaintiff's and Class Members' PII and PHI. Plaintiff and Class Members further conferred a benefit on Defendant by entrusting their PII and PHI to Defendant from which Defendant derived profits.

159.    Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class Members' PII and PHI. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant instead calculated to avoid their data security obligations at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide adequate security.

160.    Under the principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff and Class Members, because Defendant failed to implement appropriate data management and security measures that are mandated by industry standards.

161.    Defendant acquired the monetary benefit, PII, and PHI through inequitable means in that Defendant failed to disclose the inadequate security practices, previously alleged, and failed to maintain adequate data security.

162.    If Plaintiff and Class Members knew that Defendant had not secured their PII and PHI, they would not have agreed to give their money—or disclosed their data—to Defendant or Defendant's customers.

163.    Plaintiff and Class Members have no adequate remedy at law.

164.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered—and will continue to suffer—a host of injuries, including but not limited to: (1) actual identity theft; (2) the loss of the opportunity to determine how their PII and PHI is used; (3) the compromise, publication, and/or theft of their PII and PHI; (4) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their PII and PHI; (5) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (6) the continued risk to their PII and PHI, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII and PHI in their possession; and (7) future expenditures of time, effort, and money that will be spent trying to prevent, detect, contest, and repair the impact of Defendant's Data Breach.

165.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members suffered—and will continue to suffer—other forms of injury and/or harm.

166.    Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that they unjustly received from Plaintiff and Class Members.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff, individually and on behalf of all others similarly situated, requests the following relief:

A.  An Order certifying this action as a class action and appointing Plaintiff as Class representative and the undersigned as Class counsel;

B.  A mandatory injunction directing Defendant to adequately safeguard the PII and PHI of Plaintiff and the Class hereinafter by implementing improved security procedures and measures, including but not limited to an Order:

   i.  prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

   ii.  requiring Defendant to protect, including through encryption, all data collected through the course of business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

   iii.  requiring Defendant to delete and purge the PII and PHI of Plaintiff and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

   iv.  requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of Plaintiff's and Class Members' PII and PHI;

   v.  requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring, simulated attacks, penetration tests, and audits on Defendant's systems

on a periodic basis;

vi.    requiring Defendant to segment data by creating firewalls and access controls so that, if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

vii.    requiring Defendant to conduct regular database scanning and securing checks;

viii.    requiring Defendant to monitor ingress and egress of all network traffic;

ix.    requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling PII and PHI, as well as protecting the PII and PHI of Plaintiff and Class Members;

x.    requiring Defendant to implement a system of tests to assess their respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs, and systems for protecting PII and PHI;

xi.    requiring Defendant to implement, maintain, review, and revise as necessary a threat management program to appropriately monitor

> Defendant's networks for internal and external threats, and assess whether monitoring tools are properly configured, tested, and updated; and
>
> xii.  requiring Defendant to meaningfully educate all Class Members about the threats that they face because of the loss of PII and PHI to third parties, as well as the steps affected individuals must take to protect themselves.

C.  A mandatory injunction requiring that Defendant provide notice to each member of the Class relating to the full nature and extent of the Data Breach and the disclosure of PII and PHI to unauthorized persons;

D.  Enjoining Defendant from further deceptive practices and making untrue statements about the Data Breach and the stolen PII and PHI;

E.  An award of damages, including actual, nominal, consequential damages, and punitive, as allowed by law in an amount to be determined;

F.  An award of attorneys' fees, costs, and litigation expenses, as allowed by law;

G.  An award of pre- and post-judgment interest, costs, attorneys' fees, expenses, and interest as permitted by law;

H.  Granting the Plaintiff and the Class leave to amend this Complaint to conform to the evidence produced at trial;

I.  For all other Orders, findings, and determinations identified and sought in this Complaint; and

J.  Such other and further relief as this court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: January 23, 2026                    Respectfully Submitted,

/s/ *Ronald Podolny*
John A. Yanchunis*
JYanchunis@forthepeople.com
Ronald Podolny
Ronald.Podolny@forthepeople.com
Ryan J. McGee*
rmcgee@forthepeople.com
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 North Franklin Street 7th Floor
Tampa, Florida 33602
T: (813) 223-5505
F: (813) 223-5402

*Counsel for Plaintiff and the Class*

*Pro Hac Admission to be Submitted